

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR KING COUNTY

| | |
|---|---|
| JONATHAN DAVIS, an individual,<br><br>    Plaintiff,<br><br>   v.<br><br>USAA CASUALTY INSURANCE COMPANY, a foreign insurance company; and STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign insurance company;<br><br>    Defendants. | No.<br><br>**COMPLAINT FOR DAMAGES FOR BREACH OF CONTRACT, VIOLATION OF THE INSURANCE FAIR CONDUCT ACT, VIOLATION OF THE CONSUMER PROTECTION ACT AND BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING** |

COMES NOW the above-named Plaintiff, by and through his attorneys of record, OLIVE|BEARB LAW GROUP PLLC and by way of a complaint for damages against Defendants, alleges as follows:

## I.   JURISDICTION

1.1  This court has jurisdiction over the parties and the subject matter of this lawsuit.

## II.   VENUE

2.1  This court is a proper venue for this action pursuant to RCW 4.12.025 because the defendants in this action have an office in and/or conduct business in King County, and

COMPLAINT FOR DAMAGES

- Page 1 of 19

OLIVE|BEARB LAW GROUP PLLC
1218 Third Avenue, Suite 1000
Seattle, WA 98101
T: (206) 629-9909
F: (206) 971-5081

pursuant RCW 4.12.020, because the injuries alleged by the plaintiff herein occurred in King County.

### III.   PARTIES

3.1   <u>Plaintiff Jonathan Davis</u>.   At all times material hereto, the plaintiff, Jonathan Davis, was a resident of King County, Washington. On or about December 10, 2014, the plaintiff was involved in a motor vehicle accident in Issaquah, King County, Washington ("the accident"). The accident was caused by Mark De Lanoy ("Mr. De Lanoy").

3.1.1   At all times material hereto, Plaintiff was a first party insured of Defendant USAA Casualty Insurance Company ("USAA").   USAA provided Personal Injury Protection ("PIP") coverage to the plaintiff pursuant to policy number 02494 05 51C 7101 5 ("the PIP policy").

3.1.2   At all times material hereto, Plaintiff was a first party insured of Defendant State Farm Mutual Automobile Insurance Company ("State Farm"). State Farm provided underinsured motor vehicle ("UIM") coverage to the plaintiff pursuant to policy number 186 6972-C11-47 ("the UIM policy").

3.2   **Defendant USAA.**   At all times material hereto, Defendant USAA was a foreign insurance company properly licensed and with offices and doing business in King County, Washington. The PIP policy was in full force and effect at the time of the accident.

3.3   **Defendant State Farm.**   At all times material hereto, Defendant State Farm was a foreign insurance company properly licensed and with offices and doing business in King County, Washington. The UIM policy was in full force and effect at the time of the accident.

### IV.   FACTS: THE ACCIDENT

4.1   The plaintiff re-alleges paragraphs 1.1 through 3.3 as if fully set forth herein.

COMPLAINT FOR DAMAGES

- Page 2 of 19

1     4.2      On or about December 10, 2014 at approximately 5:30 p.m., Plaintiff was

2 traveling northbound when Mr. De Lanoy's vehicle, which was traveling southbound on 228th

3 Avenue Southeast, entered the lane in which Plaintiff Davis' vehicle was traveling.

4     4.3      The passenger side front end of the vehicle in which Mr. De Lanoy was traveling

5 stuck the passenger side front end of the vehicle in which Plaintiff Davis was traveling.

6     4.4      The photographs shown below as Figures 1, 2 and 3 are a true and accurate

7 depictions of the plaintiff's vehicle and Mr. De Lanoy's vehicle immediately following the

8 collision.

9     4.5      Because of the collision, the airbags in the plaintiff's car deployed and the

10 plaintiff's head was thrust forward and struck the windshield of the vehicle, with the resulting

11 damage visible in Figure 3.

12

13

14

15

16

17

18

19

20

21



22 **Figure 1: Photograph of the Plaintiff's Vehicle Immediately Following Accident**

23

24

25

COMPLAINT FOR DAMAGES

- Page 3 of 19

OLIVE|BEARB LAW GROUP PLLC
1218 Third Avenue, Suite 1000
Seattle, WA 98101
T: (206) 629-9909
F: (206) 971-5081



Figure 2: Photograph of Mr. De Lanoy's Vehicle Immediately Following Accident

Figure 3: Photograph of Windshield of Plaintiff's Vehicle Immediately After Accident

4.6    Figure 4 is a true and accurate, though not to scale, diagram of how the

COMPLAINT FOR DAMAGES

- Page 4 of 19

OLIVE|BEARB LAW GROUP PLLC
1218 Third Avenue, Suite 1000
Seattle, WA 98101
T: (206) 629-9909
F: (206) 971-5081

1 | accident occurred.



Figure 4: Police Diagram of the Accident

4.7     Immediately after impact, Plaintiff began experiencing significant pain and discomfort in his head, neck, back and arms.

4.8     The plaintiff continues to have pain and discomfort related to the accident to this day.

4.9     The plaintiff has been unable to afford to pay for ongoing, recommend health care because he lacks the financial means of doing so and because no insurer purporting to cover the cost of his healthcare has paid for ongoing, recommended medical care.

COMPLAINT FOR DAMAGES

- Page 5 of 19

OLIVE|BEARB LAW GROUP PLLC
1218 Third Avenue, Suite 1000
Seattle, WA 98101
T: (206) 629-9909
F: (206) 971-5081

4.10    The plaintiff was unable to continue to work as a window installer following the collision.  As a consequence, his previously successful window business failed.  He has also been unable to afford to pay for housing, food, heath care, transportation and other economic necessities because of the accident.

## V.    FACTS: THE USAA PIP CLAIM

5.1    The plaintiff re-alleges paragraphs 1.1 through 4.10 as if fully set forth herein.

5.2    Following the accident, Plaintiff received medical treatment, which was paid for by a separate personal injury protection policy provided by Defendant State Farm.  By December 18, 2015, Plaintiff had exhausted all benefits available to him under the personal injury protection policy provided to him by State Farm.

5.3    After the exhaustion of personal injury protection benefits from State Farm, Plaintiff promptly notified USAA and requested that USAA begin paying benefits where State Farm had left off.  Plaintiff made clear to USAA that State Farm had provided coverage for the payment of medical care and that the State Farm medical benefits coverage had been exhausted.

5.4    At USAA's request, Plaintiff provide to USAA authorization to obtain Plaintiff's medical records on or about March 18, 2016.

5.5    On or about March 22, 2016, Plaintiff informed USAA of a tentative settlement reached with Mr. De Lanoy and gave USAA an opportunity to buy the claim against Mr. De Lanoy pursuant to *Hamilton v. Farmers Ins. Co. of Wash.*, 107 Wn.2d 721 (1987).  USAA declined to purchase the claim.  USAA was not prejudiced by Plaintiff's acceptance of Mr. DeLanoy's liability policy limits.

5.6    On or about March 31, 2016, USAA or its agents sent notice to Plaintiff that it would not pay for treatment the plaintiff had received from his chiropractor in March of 2016

COMPLAINT FOR DAMAGES

- Page 6 of 19

because there was no documentation of treatment for the 15 months between the date of the accident and the date on which Plaintiff saw this chiropractor. USAA knew or should have known that this was not true. USAA's opinion in this regard came from an out of state chiropractor that had never seen Plaintiff.

5.7 On or about April 1, 2016, USAA or its agents informed Plaintiff that it would not pay for medical treatment because some other insurer was "primary". USAA did not indicate which other insurer should have paid.

5.8 After having received notice that Plaintiff had no additional coverage for medical care from State Farm, USAA nonetheless sent notice on or about April 8, 2016 that it would not provide coverage because State Farm should have paid for the care.

5.9 On or about April 12, 2016, Plaintiff provided to USAA a report written by his chiropractor, Dr. Prentice, which summarized Plaintiff's prior medical care. Plaintiff also provided an itemized billing summary of prior medical treatment, which had been paid for under State Farm's personal injury protection policy. Plaintiff also requested that USAA investigate a wage loss claim, benefits for which might be available under the PIP policy.

5.10 On or about April 18, 2016, USAA informed Plaintiff that it was awaiting additional medical records and bills.

5.11 On or about May 4, 2016, Plaintiff again informed USAA that he had no more personal injury protection through his policy with State Farm and that he wanted USAA to pay for ongoing medical treatment and wage loss. Plaintiff enclosed a copy of the State Farm personal injury protection file.

5.12 On or about May 12, 2016, Plaintiff provided chart notes from a physiatrist that had treated Plaintiff. The physiatrist referred Plaintiff for an MRI of his spine and indicated

COMPLAINT FOR DAMAGES

- Page 7 of 19

OLIVE|BEARB LAW GROUP PLLC
1218 Third Avenue, Suite 1000
Seattle, WA 98101
T: (206) 629-9909
F: (206) 971-5081

that he was not to return to work. The physiatrist also opined that Plaintiff could not return to work until cleared by his doctor.

5.13    On or about May 13, 2016, Plaintiff again provided to USAA proof that State Farm's personal injury protection policy had been exhausted. This was at least the second time that USAA was made aware that Plaintiff did not have other insurance coverage to pay for his ongoing recommended accident-related medical treatment. Plaintiff also asked USAA to investigate and pay income continuation benefits under the PIP policy.

5.14    From April of 2016 forward, USAA continued to deny coverage for medical treatment under the PIP policy or double pay for care for which State Farm had already paid from the following health care providers: Prentice Family Chiropractic, Overlake Imaging Associates, Thomas McGrath, Puget Sound Physicians, Bellevue Bone and Joint, Pro Sports Physical Therapy, Seattle Spine & Sports Medicine, Montaland McGrath Chiropractic, Center for Diagnostic Imaging, Overlake Imaging Associates, Forefront Physical Therapy and Stephanie Reimann. This caused Plaintiff distress as he feared that he would become further indebted during a period when he was unable to work for an income because of injuries he sustained in the accident.

5.15    Inexplicably, for example, on or about June 1, 2016, USAA informed plaintiff that it had denied coverage under the PIP policy for treatment at Seattle Spine & Sports Medicine, but only partially. USAA paid for trigger point injection therapy, but did not pay for the office visit at which the trigger point injection therapy was administered on March 22, 2016. This left Plaintiff confused and was also at odds with USAA's other comments that Plaintiff had already reached maximum medical improvement such that he did not need additional medical treatment.

COMPLAINT FOR DAMAGES

- Page 8 of 19

5.16    The plaintiff was caused additional confusion when, on or about June 8, 2016, USAA provided notice that it would pay for a visit with a medical doctor on May 6, 2016, but <u>would not</u> pay for trigger point injection therapy on that date. The same was true for treatment that Plaintiff had at the same clinic on May 19, 2016. This left Plaintiff confused and was also at odds with USAA's other comments that Plaintiff had already reached maximum medical improvement such that he did not need additional medical treatment.

5.17    On or about June 12, 2016, USAA provided notice to Plaintiff that it would not pay for Plaintiff's emergency room care on the date of the accident because additional documentation was needed to substantiate the relatedness of the emergency room treatment <u>on the day of the accident, a head-on collision at high speed, which caused Plaintiff's head to crack the windshield of the car in which he was driving</u>. This was strange, given that State Farm had already paid for this treatment.

5.18    Still without an ability to do the work he had done prior to the accident and with a business that hand floundered since Plaintiff had been unable to keep it running, Plaintiff requested that USAA investigate and pay income continuation benefits under the PIP policy on or about July 26, 2016.

5.19    On or about September 12, 2016, Plaintiff provided USAA with another copy of Plaintiff's State Farm PIP file. Plaintiff again requested that USAA pay income continuation benefits. On or about November 2, 2016, USAA informed Plaintiff that he had reached maximum medical improvement by November 18, 2015 and that "no further payments for loss [sic] wages" would be made for income lost after June of 2015.

5.20    In a letter dated January 6, 2017, USAA provided plaintiff with a records review from a chiropractor that had never seen or examined Plaintiff. USAA provided Plaintiff with

COMPLAINT FOR DAMAGES

- Page 9 of 19

OLIVE|BEARB LAW GROUP PLLC
1218 Third Avenue, Suite 1000
Seattle, WA 98101
T: (206) 629-9909
F: (206) 971-5081

an almost illegible medical records review performed by a chiropractor named John Dwyer, D.C.  Dr. Dwyer opined regarding treatment that was outside of his practice area, including treatment provided by a medical doctor specializing in neurology and a medical doctor specializing in physical medicine and rehabilitation.  Dr. Dwyer opined that Plaintiff reached maximum medical improvement by November 18, 2015 and that he should have returned to work prior to January 29, 2015.  Relying on this report, USAA determined that no additional income continuation benefits were appropriate in this case.

## VI.    FACTS: THE STATE FARM UIM CLAIM

6.1     The plaintiff re-alleges paragraphs 1.1 through 5.20 as if fully set forth herein.

6.2     On or about March 22, 2016, Plaintiff informed State Farm of a tentative settlement reached with Mr. De Lanoy and gave State Farm an opportunity to buy the claim against Mr. De Lanoy pursuant to *Hamilton v. Farmers Ins. Co. of Wash.*, 107 Wn.2d 721 (1987).  The next day, State Farm declined the opportunity to buy the claim.  State Farm was not prejudiced by Plaintiff's acceptance of Mr. De Lanoy's liability policy limits.

6.3     On or about August 4, 2016, Plaintiff requested payment pursuant to the UIM policy within ten days.  Plaintiff encouraged State Farm to examine the State Farm personal injury protection file already in its possession.  State Farm requested and Plaintiff granted an extension of the timeline to respond to Plaintiff's demand until September 5, 2016.

6.4     On or about September 14, 2016, Plaintiff provided State Farm with additional materials to assist it in its evaluation of the UIM claim.  On or about October 28, 2016, Plaintiff requested that State Farm provide any benefits it determined were appropriate immediately, given Plaintiff's ongoing post-concussive symptoms and other musculoskeletal injuries.  On or about October 31, 2016, State Farm requested additional medical records from Plaintiff.

COMPLAINT FOR DAMAGES

- Page 10 of 19

OLIVE|BEARB LAW GROUP PLLC
1218 Third Avenue, Suite 1000
Seattle, WA 98101
T: (206) 629-9909
F: (206) 971-5081

6.5     On or about November 9, 2016, Plaintiff informed State Farm that he was in "dire straits" and needed assistance from his insurer as soon as possible.  Plaintiff offered to provide State Farm anything it needed to assess what benefits it owed Plaintiff.  On or about December 6, 2016, Plaintiff provided State Farm with a signed "Authorization for Release of Information".

6.6     On or about January 12, 2017, Plaintiff informed State Farm that he "often had difficulty feeding, clothing and housing himself" since the accident.  He again indicated that his head injury was causing ongoing difficulties in his life and offered to provide any "additional information State Farm need[ed] to do a prompt and reasonable investigation" under the UIM policy.

6.7     On or about January 30, 2017, Plaintiff informed State Farm that he needed benefits to help pay for ongoing necessary medical care.  He posed the following written questions to State Farm:

1.     Will State Farm assist Mr. Davis in paying for ongoing treatment related to his injuries in this case?
2.     If so, how does State Farm propose going about doing so?
3.     If not, why not and how long will it take State Farm to evaluate this UIM claim?

6.8     State Farm's response to these questions, provided ten days later was as follows:

---

RE:   Claim Number:      47-5M16-619
      Date of Loss:       December 10, 2014
      Our Insured:        David Kroll
      Your Client(s):     Jonathan Davis

To Olive Bearb Law Group Pllc:

We received your letter date 1/30/2017.

Please be advised we are waiting for your client's medical records so we may evaluate Mr. Davis's bodily injury.

If Mr. Davis has medical bills for ongoing treatment, you may wish to contact our PIP/MPC dept to inquire whether PIP coverage may apply.

If you have any questions, please contact us at the number provided.

Sincerely,

---

COMPLAINT FOR DAMAGES

- Page 11 of 19

OLIVE|BEARB LAW GROUP PLLC
1218 Third Avenue, Suite 1000
Seattle, WA 98101
T: (206) 629-9909
F: (206) 971-5081

6.9     On or about March 8, 2017, Plaintiff informed State Farm that he needed payment of benefits under the UIM policy to help pay for medical treatment and a place to live. No response was received by March 30, 2017, nor was any payment made under the UIM policy.

## VII.    FACTS: THE IFCA NOTICE

7.1     The plaintiff re-alleges paragraphs 1.1 through 6.9 as if fully set forth herein.

7.2     On or about February 22, 2017, Plaintiff sent a notice pursuant to RCW 48.30.015 ("IFCA") ("the notice") to the Washington Office of the Insurance Commissioner ("OIC"); USAA; and to the adjuster handling the claim under the PIP policy on behalf of USAA.

7.3     The notice set forth claims that USAA had unreasonably denied a claim for coverage or payment of benefits under the policy.  USAA received the notice.  More than 20 days have passed since USAA received the notice.

7.4     In the notice, the plaintiff claimed that USAA had (1) failed to promptly address and respond to requests for information from Plaintiff about the specific basis or bases for USAA's decision to limit or deny coverage, (2) refused to adopt reasonable standards for prompt investigation of the PIP claim in this case by having an efficient system of determining causation of injury by, among other things, communicating directly with its insured's health care providers after having been requested to do so, (3) compelled its insureds to initiate litigation by offering substantially less than the amount that may be recovered in litigation, (4) refused to pay benefits under the PIP policy before it conducted a thorough and complete investigation of the PIP claims, (5) delayed the investigation of this first party claim by requiring its insureds to submit a preliminary claim report and then requiring subsequent submissions which contain substantially the same information, (6) failed <u>fully to explain</u> the basis or bases of its decision to stop paying

COMPLAINT FOR DAMAGES

- Page 12 of 19

OLIVE|BEARB LAW GROUP PLLC
1218 Third Avenue, Suite 1000
Seattle, WA 98101
T: (206) 629-9909
F: (206) 971-5081

PIP benefits (including for wage loss) before stopping/refusing such payments, (7) failed to respond to pertinent communications within ten working days, (8) failed to complete its investigation of PIP claims (including wage loss) within 30 days where it was reasonable to have done so, (9) failed to include a written statement with the true and actual reason for its decision to deny, limit or terminate PIP benefits.

7.5    In the notice, the plaintiff requested that within 20 days of receipt of the notice, that USAA take additional steps to investigate and pay the claim. This could have included, for example, asking that (a) Plaintiff submit to an examination under oath or provide a recorded statement; (b) Plaintiff be examined by a physician chosen by USAA; and (c) use authorizations and releases provided by Plaintiff to ask his treating health care providers what caused the need for ongoing treatment.

7.6    As of the time of the filing of this complaint, this claim remains open. USAA took none of the investigatory steps suggested in ¶7.5, above. Nothing has inhibited USAA from seeking additional information it believed it needed to investigate the claim.

## VIII.   FIRST CAUSE OF ACTION AGAINST USAA: BREACH OF CONTRACT

8.1    The plaintiff re-alleges paragraphs 1.1 through 7.6 as if fully set forth herein.

8.2    Defendant USAA had a contractual duty to its insured, the plaintiff, under the policy.

8.3    Defendant USAA also had a duty to the plaintiff to act reasonably and in good faith in the investigation and adjustment of the claim, pursuant to the terms of the insurance contracts between the parties and the implied covenant of good faith and fair dealing.

8.4    Defendant USAA breached the contract of insurance by failing in its obligations to pay compensatory damages under its policy, specifically under the PIP policy.

COMPLAINT FOR DAMAGES

- Page 13 of 19

OLIVE|BEARB LAW GROUP PLLC
1218 Third Avenue, Suite 1000
Seattle, WA 98101
T: (206) 629-9909
F: (206) 971-5081

8.5     Defendant breached its duty of equal consideration to the plaintiff pursuant to *Tank v. State Farm*, 105 Wn.2d 381, 386, 715 P.2d 1133 (1986) ("an insurer must deal fairly with an insured, giving equal consideration *in all matters* to the insured's interests") (emphasis added).   The defendant breached its duty to give equal consideration in all matters to the plaintiff.

8.6     As a direct and proximate cause of these breaches of contract, the plaintiff has sustained economic and noneconomic damages.

IX.     **SECOND CAUSE OF ACTION AGAINST USAA:**
        **VIOLATIONS OF THE CONSUMER PROTECTION ACT**

9.1     The plaintiff re-alleges paragraphs 1.1 through 8.6 as if fully set forth herein.

9.2     Defendant's acts and omissions constitute multiple violations of the insurance regulatory provisions of the Washington Administrative Code, including, but not limited to:

9.2.1   failing to promptly address and respond to requests for information from Mr. Davis about the specific basis or bases for USAA's decision to limit or deny coverage.   For example, USAA paid benefits that another PIP insurer, State Farm, had already paid despite having received the entire State Farm PIP file, in violation of WAC 284-30-330(2);

9.2.2   by failing to adopt reasonable standards for the prompt investigation of the PIP claim in this case by having an efficient system of determining causation of injury by, among other things, communicating directly with its insured's health care providers after having been requested to do so;

9.2.3   by refusing to pay benefits under the PIP policy before it conducted a thorough and complete investigation of the PIP claims in violation of WAC 284-30-330(4);

COMPLAINT FOR DAMAGES

- Page 14 of 19

OLIVE|BEARB LAW GROUP PLLC
1218 Third Avenue, Suite 1000
Seattle, WA 98101
T: (206) 629-9909
F: (206) 971-5081

9.2.4   by compelling its insured to consider and potentially commence litigation to recover benefits that long ago could and should have been paid in violation of WAC 284-30-330(7);

9.2.5   by failing <u>fully to explain</u> the basis or bases of its decision to stop paying PIP benefits (including for wage loss) before stopping/refusing such payments in violation of WAC 284-30-330(13);

9.2.6   by failing to respond to pertinent communications within ten working days in violation of WAC 284-30-360(3);

9.2.7   failing to complete its investigation of PIP claims (including wage loss) within 30 days where it was reasonable to have done so in violation of WAC 284-30-370,

9.2.8   by failing to include a written statement with the true and actual reason for its decision to deny, limit or terminate PIP benefits in violation of WAC 284-30-395(2).

9.3   Defendant USAA's violations of the Washington Administrative Code, as alleged herein, constitute per se violations of RCW 19.86 *et. seq.*, the Consumer Protection Act.

9.4   Defendant USAA's violations of certain enumerated provisions of the Washington Administrative Code also constitute the basis of additional remedies available under IFCA.

9.5   As a direct and proximate cause of these violations, the plaintiff has been injured.

## X.   THIRD CAUSE OF ACTION AGAINST USAA: NEGLIGENCE/BAD FAITH

10.1   Plaintiff re-allege paragraphs 1.1 through 9.5 as if fully set forth herein.

10.2   Defendant USAA had a duty to act in good faith in the investigation and

COMPLAINT FOR DAMAGES

- Page 15 of 19

OLIVE|BEARB LAW GROUP PLLC
1218 Third Avenue, Suite 1000
Seattle, WA 98101
T: (206) 629-9909
F: (206) 971-5081

adjustment of the claims.

10.3    Defendant USAA also had a duty to treat the plaintiff's interests equal with its own during the investigation and adjustment of the claim. *See* ¶ 8.5, above.

10.3.1 USAA failed to give equal consideration to the plaintiff's interests by failing to conduct a reasonable investigation and unreasonably delaying and denying payment of PIP benefits;

10.3.2 Defendant USAA failed to act in good faith when it failed to timely pay claims it was obligated to pay.

10.4    Such failure to act in good faith is a *per se* violation of the Washington Consumer Protection Act, RCW 19.86, *et. seq.* Such failure to act in good faith also sounds in tort.

10.5    As a direct and proximate cause of this negligence/bad faith, the plaintiff has sustained physical and emotional injuries, which have caused economic and noneconomic damages.

## XI.    FOURTH CAUSE OF ACTION AGAINST USAA: VIOLATION OF THE INSURANCE FAIR CONDUCT ACT

11.1    Plaintiff re-alleges paragraph 1.1 through 10.5 as if fully set forth herein.

11.2    Pursuant to IFCA, Defendant USAA's unreasonable denial of coverage and payment of benefits constitutes a violation of IFCA.

11.3    USAA, by and through its agents, has violated the Washington Administrative Code ("WAC"), including, but not limited to, the violations set forth in paragraphs 9.2.1 – 9.2.8, above, which constitutes evidence of unreasonableness and provides a basis for enhanced damages.

11.4    As a direct and proximate cause of these violations, the plaintiff has been injured.

## XII.    FIRST CAUSE OF ACTION AGAINST STATE FARM:

COMPLAINT FOR DAMAGES

- Page 16 of 19

OLIVE|BEARB LAW GROUP PLLC
1218 Third Avenue, Suite 1000
Seattle, WA 98101
T: (206) 629-9909
F: (206) 971-5081

**BREACH OF CONTRACT**

12.1    The plaintiff re-alleges paragraphs 1.1 through 11.4 as if fully set forth herein.

12.2    Defendant State Farm had a contractual duty to its insured, the plaintiff, under the UIM policy.

12.3    Defendant State Farm also had a duty to the plaintiff to act reasonably and in good faith in the investigation and adjustment of the claim, pursuant to the terms of the insurance contracts between the parties and the implied covenant of good faith and fair dealing.

12.4    Defendant State Farm breached the contract of insurance by failing in its obligations to pay compensatory damages under its policy, specifically under the UIM policy.

12.5    Defendant breached its obligation to the plaintiff to "deal in good faith and fairly as to the terms of the policy and not overreach the insured, despite its adversary interest." *Ellwein v. Hartford Accident & Indem. Co.*, 142 Wn.2d 766, 781 (2001).

12.6    The defendant breached its duty to deal fairly and in good faith under the UIM policy.

12.7    As a direct and proximate cause of these breaches of contract, the plaintiff has sustained economic and noneconomic damages.

**XIII.   SECOND CAUSE OF ACTION AGAINST STATE FARM:**
**VIOLATIONS OF THE CONSUMER PROTECTION ACT**

13.1    The plaintiff re-alleges paragraphs 1.1 through 12.7 as if fully set forth herein.

13.2    State Farm's acts and omissions constitute multiple violations of the insurance regulatory provisions of the Washington Administrative Code, including, but not limited to:

13.2.1 failing to adopt and implement reasonable standards for the prompt investigation of claims arising under its UIM policy in violation of WAC 284-30-330(3);

13.2.2 refusing to pay claims without conducting a reasonable investigation in

OLIVE|BEARB LAW GROUP PLLC
1218 Third Avenue, Suite 1000
Seattle, WA 98101
T: (206) 629-9909
F: (206) 971-5081

violation of WAC 284-30-330(4);

13.2.3 compelling the plaintiff to initiate litigation by offering substantially less than is ultimately recovered in violation of WAC 284-30-330(7);

13.2.4 failing to complete its investigation of the claims in this case within a reasonable period in violation of WAC 284-30-370;

13.3    The defendant's violations of the Washington Administrative Code, as alleged herein, constitute per se violations of RCW 19.86 *et. seq.*, the Consumer Protection Act.

13.4    As a direct and proximate cause of these violations, the plaintiff has been injured.

## XIV.    THIRD CAUSE OF ACTION AGAINST STATE FARM: NEGLIGENCE/BAD FAITH

14.1    Plaintiff re-alleges paragraphs 1.1 through 13.4 as if fully set forth herein.

14.2    Defendant State Farm had a duty to act in good faith in the investigation and adjustment of the claims.

14.3    Defendant State Farm also had a duty to deal with the plaintiff in good faith and fairly and not overreach.  *See* ¶ 12.5, above.

14.3.1 State failed to deal with Plaintiff fairly and in good faith by failing to conduct a reasonable investigation and unreasonably delaying and denying payment of UIM benefits;

14.3.2 Defendant State Farm failed to act in good faith when it failed to timely pay claims it was obligated to pay.

14.4    Such failure to act in good faith is a *per se* violation of the Washington Consumer Protection Act, RCW 19.86, *et. seq.*  Such failure to act in good faith also sounds in tort.

14.5    As a direct and proximate cause of this negligence/bad faith, the plaintiff has sustained physical and emotional injuries, which have caused economic and noneconomic

COMPLAINT FOR DAMAGES

- Page 18 of 19

OLIVE|BEARB LAW GROUP PLLC
1218 Third Avenue, Suite 1000
Seattle, WA 98101
T: (206) 629-9909
F: (206) 971-5081

1    damages.

2                                   **PRAYER FOR RELIEF**

3        Wherefore, the plaintiff prays for judgment against the defendants as follows:

4        1.      For all direct and consequential damages flowing from Defendants' breach of

5                contract, bad faith claims handling, negligence, violation of the CPA and

6                violations of IFCA as set forth above, including contractual damages and extra

7                contractual economic and noneconomic damages;

8        2.      For trebling of said actual damages caused by USAA and State Farm pursuant to

9                the CPA;

10       3.      For trebling of said actual damages caused by USAA pursuant to IFCA;

11       4.      For reasonable attorney fees, litigation and expert costs incurred in prosecuting

12               this action against Defendants USAA and State Farm pursuant to the CPA, IFCA,

13               *Olympic S.S. Co., Inc. v. Centennial Ins. Co.*, 117 Wn.2d 37 (1991), and all other

14               equitable remedies that may be available;

15       5.      For injunctive relief, pursuant to the CPA to enjoin further violations by

16               Defendants USAA and State Farm;

17       6.      For prejudgment interest on all damages to the extent permitted by applicable law;

18       7.      For all other relief the Court deems fair, just and equitable.

19       DATED this 6th day of April 2017.

20                                   OLIVE|BEARB LAW GROUP, PLLC

21

22

23                                   Kyle C. Olive, WSBA #35552
                                     1218 Third Avenue, Suite 1000
24                                   Seattle, WA 98101
                                     P: (206) 629-9909 – F: (206) 971-5081
25                                   Attorney for the Plaintiff

COMPLAINT FOR DAMAGES                          OLIVE|BEARB LAW GROUP PLLC
                                               1218 Third Avenue, Suite 1000
- Page 19 of 19                                Seattle, WA 98101
                                               T: (206) 629-9909
                                               F: (206) 971-5081